IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**VITTAL PAI and GEETHA PAI, his wife,**

    **Plaintiffs,**

vs.                                                          **No. CIV 07-0495 RB/WDS**

**WELLS FARGO BANK, N.A.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss, or in the Alternative, Compel Arbitration (Doc. 7), filed on May 25, 2007. Jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I grant this motion with respect to the home equity lines of credit, and deny the motion with respect to the personal line of credit.

**I.**     **Background.**

Plaintiffs are residents of Las Cruces, New Mexico. Defendant is a national banking association organized and existing under the laws of the United States, with its main office located in South Dakota. This action involves three lines of credit allegedly extended by Defendant to Plaintiffs in 2004. Plaintiffs brought suit in state court for declaratory judgment, conversion, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. Defendant removed this action pursuant to 28 U.S.C. § 1441.

Defendant moves to dismiss, or to compel arbitration, based on Agreements allegedly covering the three lines of credit. In support of the motion, Defendant submitted affidavits of its employees and copies of portions of the Agreements.

Plaintiffs respond that: (1) Plaintiffs did not authorize disbursement of funds with respect to any of the lines of credit; (2) Plaintiffs never authorized the third line of credit; (3) Defendant allowed a third party to fraudulently apply for the third line of credit without Plaintiffs' knowledge; (4) Plaintiffs are entitled to a jury trial on the question of whether there was an agreement as to the third line of credit; and (5) silence did not constitute an agreement to arbitrate any dispute relating to the third line of credit.  Plaintiffs request denial of the motion or, in the alternative, a stay of arbitration proceedings pending a jury determination of questions of fact relating to the existence of an agreement relating to the third line of credit.

Defendant replies that: (1) Plaintiffs admit they applied for two lines of credit and such agreements are subject to arbitration; (2) Plaintiffs fail to allege any material facts precluding arbitration on the third line of credit; (3) Plaintiffs' reliance on silence is misplaced; and (4) Plaintiffs are not entitled to a stay.

**II.    Facts.**

Plaintiff Vittal Pai (herein "Dr. Pai") is currently 68 years old.  ([Doc. 10-2] Pl. Ex. A, Pai Aff. ¶ 1.) Plaintiff Geetha Pai is Dr. Pai's spouse.  (Doc. 1, Ex. A.)  Dr. Pai has been a licensed physician practicing in Las Cruces, New Mexico since 1974.  ([Doc. 10-2] Pl. Ex. A, Pai Aff. ¶ 3.) Plaintiffs have owned their home in Las Cruces since the mid-1970s.  (Pai Aff. ¶ 2.)

In order to assist their son, Sunil Pai, M.D., in starting a business, Plaintiffs applied for, and received, two home equity lines of credit (herein "home equity lines of credit" or "HELOCs") from Defendant.  (Pai Aff. ¶¶ 4 and 5; Doc. 1, Ex. A.)  Specifically, on April 27, 2004, Plaintiffs executed an "EquityLine with FlexAbility (SM) Agreement and Disclosure Statement" in connection with a $39,500 home equity line of credit.  ([Doc. 7-2] Def. Ex. 1.)  On April 28, 2004, Plaintiffs executed an "EquityLine with FlexAbility (SM) Agreement and Disclosure Statement" in connection with a

$54,000 home equity line of credit.  ([Doc. 7-3] Def. Ex. 2.)  The HELOCs are secured by Plaintiffs' Las Cruces home.[1]  ([Doc. 7-2] Def. Ex. 1; [Doc. 7-3] Def. Ex. 2.)

The Agreements for the HELOCs contain the following arbitration provision:

RESOLVING DISPUTES – ARBITRATION
… I agree that any dispute between me and the Bank, regardless of when it arises or arose, will be settled using the following procedures.

I UNDERSTAND AND AGREE THAT THE BANK AND I ARE WAIVING THE RIGHT TO JURY TRIAL BEFORE A JUDGE IN A PUBLIC COURT. FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE SUBJECT TO ARBITRATION.

DISPUTES
A dispute is any unresolved disagreement between the Bank and me that relates in any way to accounts, loans, services or agreements subject to this Arbitration provision. It includes any claims or controversy of any kind which arise out of or are in any way related to these accounts, loans, services or agreements. It includes claims based on broken promises or contracts, tort (injury caused by negligent or intentional conduct), breach of fiduciary duty or other wrongful actions. It also includes statutory, common law and equitable claim. A dispute also includes any disagreement about the meaning of this Arbitration Section. No dispute may be joined in an arbitration with a dispute of any other person or arbitrated on a class action basis. Furthermore, I agree that any arbitration I have with the Bank shall not be considered with any other arbitration and shall not be arbitrated on behalf of others without the consent of both me and the Bank.

BINDING ARBITRATION
Binding arbitration is a means of having one or more independent third parties resolve disputes without using the court system, judges or juries.  Either me [sic] or the Bank may submit a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. . . .

([Doc. 7-2] Def. Ex. 1; [Doc. 7-3] Def. Ex. 2.)

Plaintiffs' son hired an individual named Donald Hockmuth as a financial advisor.  (Pai Aff. ¶ 6.)  Without authorization from Plaintiffs, and with the cooperation of Defendant, Hockmuth

---

[1] The copies of these documents on file do not contain Plaintiffs' signatures.

withdrew funds from the two HELOCs for the benefit of Hockmuth.  (Pai Aff. ¶ 7.)

According to Defendant, Plaintiffs applied for a third line of credit in the amount of $85,000 (herein "personal line of credit").  ([Doc. 7-4] Def. Ex. 3, Freeman Aff.)  As a result of such application, Plaintiffs were notified, by letter dated May 8, 2004 sent to their home address, that they were approved for a personal line of credit in the amount of $40,000 (herein "personal line of credit").  ([Doc. 7-4] Def. Ex. 3, Freeman Aff., Ex. A.)  An increase of the personal line of credit was requested, and based upon additional information, Defendant increased the personal line of credit to $85,000.  ([Doc. 7-4] Def. Ex. 3, Freeman Aff.)

The Agreement and Disclosure Statement for the personal line of credit contains the following arbitration provision:

> …You agree by opening or maintaining an account with Us, or by accepting a service from Us described in this Agreement or Our Customer Account Brochure, that any dispute between You and Us, regardless of when it arose, will be settled using the following procedures.
> You understand and agree that you and the Bank are waiving the right to a jury trial or a trial before a judge in a public court. Further, You will not have the right to participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration.
>
> **Disputes.**
> A dispute is any unresolved disagreement between You and the Bank that relates in any way to accounts or services described in this Agreement or Our Customer Account Brochure, or to Your use of any staffed banking location, Bank ATM, online internet banking or any other method you may use to access the Bank. It also includes any claim that arises out of or is related to these accounts, services or related agreements. It includes claims based on broken promises or contracts, torts (injuries caused by negligent or intentional conduct), or other wrongful actions. It also includes statutory, common law and equitable claims. A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement. No dispute may be joined in an arbitration with a dispute of any other person or arbitrated on a class action basis. Furthermore, You and the Bank agree that any arbitration we have shall not be consolidated with any other arbitration and shall not be arbitrated on behalf of others without the consent of You and the Bank.

> **Binding Arbitration.**
> Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges or juries. Either you or the bank may submit a dispute to binding arbitration at any reasonable time, notwithstanding that a lawsuit or other proceeding has been commenced. If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to submit bears all costs and expenses incurred by the other compelling arbitration. . . .

([Doc. 7-4] Def. Ex. 3, Freeman Aff., Ex. A.)

According to Plaintiffs, they never applied for the personal line of credit. (Pai Aff. ¶ 8.) Dr. Pai has no recollection of receiving the letter allegedly sent by Defendant to his home address in May 2004. (Pai Aff. ¶ 11.) If Dr. Pai had received such letter, he would have ignored it as "junk mail." (Pai Aff. ¶ 12.)

Dr. Pai states in his affidavit that Plaintiffs never agreed to arbitration, or anything else, in connection with the personal line of credit, which Plaintiffs neither applied for, nor authorized. (Pai Aff. ¶ 10.) With respect to the personal line of credit, Plaintiffs had no intention to agree to arbitration and did not agree to arbitration through silence or failure to respond to any unsolicited letter sent by Defendant. (Pai Aff. ¶ 13.)

### III. Standard.

A motion to compel arbitration is governed by the Federal Arbitration Act (herein "FAA"), 9 U.S.C. § 1-16. *See Ansari v. Qwest Commc'ns.*, 414 F.3d 1214, 1218 (10th Cir. 2005). The FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . .. The court shall hear the parties, *and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue*, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing

5

>and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4 (emphasis added).

Where disputes arise concerning the existence of an agreement to arbitrate, the Courts of Appeals have "uniformly applied a standard similar to that governing motions for summary judgment." *Clutts v. Dillard's, Inc.*, 484 F.Supp.2d 1222, 1223 (D. Kan. 2007) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary-judgment-like standard in ruling on a motion to compel arbitration); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (same); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980) (same).

While the Tenth Circuit has not directly addressed this issue, existing Tenth Circuit precedent indicates endorsement of such a standard. *See, e.g., Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1166 (10th Cir. 1999) (reviewing the district court's grant of a motion to compel arbitration under the summary judgment standard where the parties agreed that standard applied); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (citing *Par-Knit Mills* with approval and holding the district court must hold a jury trial on the existence of the agreement to arbitrate where the parties raise genuine issues of material fact regarding the making of the agreement to arbitrate).

Under this standard, the moving party must present evidence sufficient to demonstrate the existence of an enforceable arbitration agreement. *Stein v. Burt-Kani One, LLC*, 396 F.Supp.2d 1211, 1212 (D. Colo. 2005); *see also Avedon Eng'g*, 126 F.3d at 1287 ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be

invoked."). Once the moving party makes such a showing, the responding party must then establish a genuine issue of material fact as to the making of the agreement. *Stein*, 396 F.Supp.2d at 1212. If the responding party establishes a genuine issue of material fact as to the making of the agreement, a trial on the existence of the arbitration agreement is proper. *Avedon Eng'g*, 126 F.3d at 1283.

### IV.   Discussion.

#### A.   The motion is granted with respect to the HELOCs.

The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quotations omitted). "Absent some ambiguity in the [arbitration] agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). "As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006).

Plaintiffs do not dispute that they agreed to arbitrate disputes related to the HELOCs. *See* Pls.' Resp. in Op. to Def.'s Mot. To Dismiss, or in the Alternative, Compel Arbitration. (Doc. 10.) Indeed, Plaintiffs agreed "that any dispute between me and the Bank, regardless of when it arises or arose, will be settled" by arbitration. ([Doc. 7-2] Def. Ex. 1; [Doc. 7-3] Def. Ex. 2.)  The Agreements broadly defined "dispute" and such definition encompasses the claims alleged in this suit as they relate to the HELOCs.  The Agreements further provided that either party "may submit a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced." ([Doc. 7-2] Def. Ex. 1; [Doc. 7-3] Def. Ex. 2.)

Based on the plain meaning of the Agreements to arbitrate relating to the HELOCs, Plaintiffs

agreed to arbitrate disputes arising out of such Agreements. Insofar as this lawsuit concerns disputes arising out of the Agreements on the HELOCs, the claims are subject to arbitration. Plaintiffs have submitted no arguments against enforcement of these provisions. Accordingly, the parties' agreements to arbitrate with respect to the HELOCs will be enforced.

### B. The motion is denied with respect to the personal line of credit.

The presumption in favor of arbitration disappears "when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). When deciding whether the parties agreed to arbitrate, courts should generally apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

New Mexico law[2] defines a contract as "a legally enforceable promise [or] [set of promises]." UJI 13-801 NMRA. "For an offer and acceptance to create a binding contract, there must be an objective manifestation of mutual assent by the parties to the material terms of the contract." *Pope v. Gap, Inc.*, 961 P.2d 1283, 1286-87 (N.M. Ct. App. 1998). Here, Plaintiffs have presented evidence that there was no objective manifestation of mutual assent to the personal line of credit.

Notably, Plaintiffs have presented evidence that they never agreed to arbitration, or anything else, in connection with the personal line of credit, which Plaintiffs neither applied for, nor authorized. This factual dispute is underscored by Dr. Pai's affidavits stating that Plaintiffs had no intention to agree to arbitration and did not agree to arbitration through silence or failure to respond to an unsolicited letter sent by Defendant. Simply put, Plaintiffs have established a genuine issue

---

[2] The parties do not contest the applicability of New Mexico law.

of material fact as to the making of the agreement. *See Stein*, 396 F.Supp.2d at 1212. In light of the disputed issues of material fact as to the making of an agreement to arbitrate, a trial on the existence of the arbitration agreement is proper. *Avedon Eng'g*, 126 F.3d at 1283. Accordingly, the motion is denied with respect to the personal line of credit.

### C. Plaintiffs' request to stay arbitration proceedings with respect to the HELOCs is denied.

Plaintiffs cite no authority in support of their request to stay arbitration proceedings and the Court's research has revealed none. Due to the strong presumption in favor of arbitration when the existence of a valid agreement to arbitrate is undisputed, a stay of arbitration proceedings on the HELOCs would be inappropriate. Accordingly, Plaintiffs' request for a stay is denied.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, Compel Arbitration (Doc. 7), filed on May 25, 2007, is granted with respect to the home equity lines of credit, and denied with respect to the personal line of credit.

**IT IS FURTHER ORDERED** that Plaintiffs' request to stay arbitration proceedings on the home equity lines of credit is denied.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**